**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| ORIGIN FOOD GROUP, LLC | ) | Case No. 25-50268<br>Chapter 11 |
| Debtor. | ) | |
| ICELANDIC PROVISIONS, INC. | ) | Adv. Proc. No. 25-05013 |
| Plaintiff, | ) | |
| v. | ) | |
| ORIGIN FOOD GROUP, LLC, HALIL ULUKAYA, and GEORGE SAMARTZIS | ) | |
| Defendants. | ) | |

**NOTICE OF HEARING:**

**PLEASE TAKE NOTICE** that counsel for the above-captioned debtor (the "Movant"), has filed with the Court a **MOTION TO APPROVE SETTLEMENT** (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that your rights may be affected by the Motion. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

**PLEASE TAKE FURTHER NOTICE** that a hearing will be held on the Motion on **September 22, 2025, at 10:30 a.m. (EDT)** before the Honorable Laura Beyer in at the United States Bankruptcy Court, Charles Jonas Federal Building, Courtroom 2A, 401 West Trade Street, Charlotte North Carolina.

**PLEASE TAKE NOTICE THAT A SUMMARY OF SETTLEMENT TERMS ARE AS FOLLOWS:**

a. In consideration for the return of certain equipment and mutual releases for the claims raised in this action, Icelandic shall pay $1,375,000.00 to the Debtor ("Settlement Payment") which shall be paid upon approval of the Settlement Agreement and removal of certain equipment.

b. The Settlement Payment shall be good and certifiable funds delivered to a mutually agreeable escrow agent.

c. The Settlement Agreement is conditioned upon approval of this Court.

d. The parties agree to a mutual release of any and all claims except as otherwise provided in the Settlement Agreement.

e. After approval of this Agreement, the parties shall cooperate and coordinate the filing of a Voluntary Dismissal with Prejudice in the Adversary Proceeding and any related matter.

**PLEASE TAKE FURTHER NOTICE** that, if you or your attorney do not file a written response to the Motion, the Court may grant the relief requested in the Motion without a hearing. No further notice will be given.

Dated: Charlotte, North Carolina
September 12, 2025

**ESSEX RICHARDS, P.A.**

*<u>/s/ John C. Woodman</u>*
John C. Woodman (NC Bar No. 42365)
1701 South Blvd.
Charlotte, North Carolina 28203
(704) 377-4300
jwoodman@essexrichards.com

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ORIGIN FOOD GROUP, LLC | ) | Case No. 25-50268 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ICELANDIC PROVISIONS, INC. | ) | Adv. Proc. No. 25-05013 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ORIGIN FOOD GROUP, LLC, HALIL ULUKAYA, and GEORGE SAMARTZIS | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO APPROVE SETTLEMENT**

Now comes the above-captioned debtor and debtor-in-possession, Origin Food Group, LLC (the "Debtor"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and Local Rules 9013-1(e) and 9019-1, and hereby moves the Court for the entry of an order authorizing and approving the settlement by and between the Debtor, and Icelandic Provisions, Inc. ("Icelandic"). In support of the Motion, the Debtor states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is appropriate in this district pursuant to 28 U.S.C. § 1409.

2. The authority for the relief sought herein is Bankruptcy Rule 9019.

## BACKGROUND

3. The Debtor filed chapter 11 bankruptcy on August 20, 2025 ("Petition Date"), before the United States Bankruptcy Court for the Western District of North Carolina ("Court").

4. On or about July 15, 2025, Icelandic commenced an action against the Debtor with the filing of a Complaint, which complaint was subsequently amended to assert a claim against the Debtors' insiders, in that certain matter entitled *Icelandic Provisions, Inc. v. Origin Food Group, LLC, Halil Ulukaya and George Samartzis* pending in the North Carolina General Court of Justice, Superior Court Division, Iredell County, Case No. 25-CVS-2518 (the "Iredell Case").

5. In the Iredell Case, Icelandic asserted against the Debtor and its insiders the following causes of action: (i) Recovery of Possession and Damages, (ii) Replevin, (iii) Delivery of Unique Chattel, and (iv) Declaratory Relief – Alter Ego Liability (collectively, the "Icelandic Claims") to which said claims were disputed by the Debtor and its insiders.

6. On or about August 19, 2025, Origin answered the complaint in the Iredell Case and asserted certain counterclaims against Icelandic.

7. On August 25, 2025, pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor removed the Iredell Case, creating this Adversary Proceeding in the Bankruptcy Court, Case No. 25-05013 (the "AP").

8. On September 10, 2025, the Debtor amended its answer and counterclaims pursuant to Bankruptcy Rule 7015 asserting the following causes of action: (i) Declaratory Judgment, (ii) Fraudulent Misrepresentation, (iii) Negligent Misrepresentation, (iv) Breach of Covenants of Good Faith and Fair Dealing, (v) Unjust Enrichment, (vi) Tortious Interference, (vii) Fraud, (viii) Breach of Contract, (ix) Unfair and Deceptive Trade Practices, and (x) Constructive Trust (collectively, the "Origin Claims") to which Icelandic disputes the said claims.

9. Pursuant to the Settlement Agreement (defined below), Icelandic shall pay $1,375,000.00 to the Debtor for the benefit of the bankruptcy estate on approval of the Settlement Agreement and removal of certain equipment.

10. While both parties were prepared to proceed with litigating the various claims and the contested matters raised in this Adversary Proceeding, considering the unknown and attendant costs and risk associated with litigating and defending the substantive claims, the Parties entered into a settlement agreement on or about September 12, 2025 (the "Settlement Agreement"), in order to resolve the disputes surrounding Adversary Proceeding and any claims the parties may have against each other.

11. Attached hereto as Exhibit A is a true and accurate copy of the Settlement Agreement, the terms of which are incorporated by reference as if set forth fully herein. The material terms of the Settlement Agreement are summarized below. To the extent that the summary below differs from the terms contained within the Settlement Agreement, the terms of the Settlement Agreement govern.

**SUMMARY OF SETTLEMENT TERMS**

11. The terms of the Settlement Agreement are as follows:

a. In consideration for the return of certain equipment and mutual releases for the claims raised in this action, Icelandic shall pay $1,375,000.00 to the Debtor ("Settlement Payment") which shall be paid upon approval of the Settlement Agreement and removal of certain equipment.

b. The Settlement Payment shall be good and certifiable funds delivered to a mutually agreeable escrow agent.

c. The Settlement Agreement is conditioned upon approval of this Court.

d. The parties agree to a mutual release of any and all claims except as otherwise provided in the Settlement Agreement.

e. After approval of this Agreement, the parties shall cooperate and coordinate the filing of a Voluntary Dismissal with Prejudice in the Adversary Proceeding and any related matter.

**BASIS FOR RELEIF REQUESTED**

12. Bankruptcy Rule 9019(a) provides the basis for the relief requested in this motion and provides: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

13. Generally, "compromises are favored in bankruptcy." *Myers v. Martin,* 91 F.3d 389, 393 (3rd Cir. 1996)(citing *Collier on Bankruptcy* 9019.03)(15th ed. 1993). In approving a settlement, the court "need not conduct an exhaustive investigation," or mini-trial, "into the validity of the merits of the claims sought to be compromised." *United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982). It is sufficient that the court finds that the settlement was negotiated in good faith as well as being reasonable, fair and equitable. *See, Martin v. Kane (In Re: A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir.)(cert. denied, 479 U.S. 854 (1986).

14. Courts have identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors. *See Myers*, 91 F.3d at 393 (3rd Cir. 1996) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25, 88 S. Ct. 1157, 1163-64 (1968).

15. The consideration of the above factors does not require the Court to decide the

questions of law and fact raised in the controversies to be settled, or to determine whether the settlement presented is the best one that could possibly have been achieved. Rather, the Court need only canvass the issues to determine whether the settlement falls "below the lowest point in the zone of reasonableness." *See, e.g. Newman v. Stein*, 464 F.2d 689, 698 (2d Cir.)(*cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972)); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.)(*cert. denied*, 464 U.S. 822 (1983)). Finally, although the Court should "give deference to the reasonable views of creditors, objections do not rule." *In re Lee Way Holding Co.,* 120 B.R. 881, 891 (Bankr. S. D. Ohio 1990).

16. The Debtor and Icelandic have each determined that their respective best interests are served by settling on the terms set forth in the Settlement Agreement. The parties also submit that the settlement proposed herein (a) is in the best interest of the interested parties, (b) is reasonable, fair and equitable, and (c) favorably avoids the uncertainty and costs related to litigating the contested matters and claims at issue.

17. As a result, Court approval of the Settlement Agreement is warranted in these circumstances and is in the best interests of the bankruptcy estate and all parties in interest.

**NOTICE**

18. Notice of this motion and a summary of the settlement terms has been given to (a) the Bankruptcy Administrator for the Western District of North Carolina, (b) counsel for Icelandic, (c) all parties in interest.

**WHEREFORE,** the parties respectfully request that the Court enter an order approving the Settlement Agreement and such other and further relief as is just and proper.

Dated: Charlotte, North Carolina
September 12, 2025

**ESSEX RICHARDS, P.A.**

*/s/ John C. Woodman*
John C. Woodman (NC Bar No. 42365)
1701 South Blvd.
Charlotte, North Carolina 28203
(704) 377-4300
jwoodman@essexrichards.com

# EXHIBIT 'A'

# SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (the "Agreement"), dated as of September 12, 2025 (the "Execution Date"), is entered into by ORIGIN FOOD GROUP, LLC ("Origin"), GEORGE SAMARTZIS ("GS"), HALIL ULUKAYA ("HL", and together with Origin and GS, the "Origin Parties"), and ICELANDIC PROVISIONS, INC. ("Icelandic"). Icelandic, and the Origin Parties are collectively referred to, when applicable, as the "Parties."

**WITNESSETH:**

**WHEREAS**, Origin is located at 306 Stamey Farm Rd., Statesville, North Carolina 28672 (the "Factory") in which it operates as a food co-packer;

**WHEREAS**, on or about July 15, 2025, Icelandic commenced an action against Origin with the filing of a Complaint, which complaint was subsequently amended to assert a claim against GS and HL, in that certain matter entitled *Icelandic Provisions, Inc. v. Origin Food Group, LLC, Halil Ulukaya and George Samartzis* pending in the North Carolina General Court of Justice, Superior Court Division, Iredell County, Case No. 25-CVS-2518 (the "Iredell Case");

**WHEREAS**, in the Iredell Case, Icelandic asserted against the Origin Parties the following causes of action: (i) Recovery of Possession and Damages, (ii) Replevin, (iii) Delivery of Unique Chattel, and (iv) Declaratory Relief – Alter Ego Liability (collectively, the "Icelandic Claims");

**WHEREAS**, the Origin Parties dispute the Icelandic Claims and asserted certain defenses to the same;

**WHEREAS**, on or about August 19, 2025, Origin answered the complaint in the Iredell Case and asserted certain counterclaims against Icelandic;

**WHEREAS**, on August 20, 2025 (the "Petition Date"), a voluntary petition was filed by Origin under Chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court") Case No. 25-50268 (the "Base Case");

**WHEREAS**, on August 25, 2025, pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Origin removed the Iredell Case, creating an Adversary Proceeding in the Bankruptcy Court, Case No. 25-05013 (the "AP");

**WHEREAS**, On September 10, 2025, Origin amended its answer and counterclaims pursuant to Bankruptcy Rule 7015 asserting the following causes of action: (i) Declaratory Judgment, (ii) Fraudulent Misrepresentation, (iii) Negligent Misrepresentation, (iv) Breach of Covenants of Good Faith and Fair Dealing, (v) Unjust Enrichment, (vi) Tortious Interference, (vii) Fraud, (viii) Breach of Contract, (ix) Unfair and Deceptive Trade Practices, and (x) Constructive Trust (collectively, the "Origin Claims");

**WHEREAS**, Icelandic disputes the Origin Claims; and

**WHEREAS**, the Parties now wish to enter into this Agreement to resolve all disputes amongst them related to the Icelandic Claims, the Origin Claims, the Iredell Case, the Base Case, and the AP and any and all claims amongst them, and to fully memorialize the terms of their settlement.

**NOW, THEREFORE**, in consideration of the promises herein contained, and other good and valuable consideration, the undersigned Parties agree as follows:

1. Settlement Payment. On the Effective Date (as defined below), Icelandic shall pay the total sum of $1,375,000.00 (the "Settlement Payment") into escrow with a mutually agreeable escrow agent. Upon completion of the removal of the Equipment (as defined below), and subject to the Origin Parties' compliance with the other terms and conditions on this Settlement Agreement, the Settlement Payment shall be paid by such escrow agent, and Icelandic shall take all such actions as are necessary to cause payment of the Settlement Payment, via wire or good funds to Origin Food Group, Inc. with memo noted "Icelandic Settlement."

2. Removal and Configuration.

a. **Removal of Equipment.** Commencing on the Effective Date, Origin shall provide Icelandic (including any representatives, contractors, consultants, or other third-parties engaged by Icelandic) with access to the Factory, and shall permit Icelandic (including any representatives, contractors, consultants, or other third-parties engaged by Icelandic) to remove the equipment listed on **Exhibit 1** attached hereto (the "Equipment") from the Factory.

b. **Costs.** Icelandic shall pay its own costs and fees to remove the Equipment. Origin shall bear all costs and fees to reinstall any equipment other than the Equipment, and to otherwise re-configure the Factory.

c. **Site Visits.** On the Execution Date, Origin shall permit Icelandic and its representatives to access the Factory for the purpose of identifying and inventorying the Equipment (the "Initial Site Visit"). In addition, prior to removal of the Equipment, Origin shall permit Icelandic and/or its third-party specialist to access the Factory for the purpose of inspecting and verifying the condition of the Equipment ("Subsequent Site Visit", and with the Initial Site Visit, the "Site Visits"). Icelandic shall provide three potential dates and times to Origin for the Subsequent Site Visit and Origin shall accommodate with one of such three potential dates. Except as otherwise provided in this Agreement, Icelandic agrees and covenants to indemnify, defend and save harmless Origin from and against any and all claims and damages of any kind in any way that are incident or related in any way to the removal of the Equipment with regard to, inter alia, any damage that is caused to the Factory and/or Origin's equipment that will remain at the Factory. Such indemnification obligations shall include any damage to the Factory from the removal of the Equipment.

3. Effectiveness. This Agreement shall be effective on the date on which the following conditions have been satisfied (such date, the "Effective Date"): (a) the execution of

the Agreement by all of the Parties; and (b) the Bankruptcy Court's entry of the Order approving this Agreement, which Order shall be in form and substance acceptable to Icelandic.

4. **Motion to Approve Settlement**. Origin shall file a motion to approve this Agreement with the Bankruptcy Court, which motion and related documents shall be in form and substance acceptable to Icelandic, and notice up the same case wide in the Base Case (the "Settlement Motion"). A condition precedent to this Agreement by Icelandic is that the Bankruptcy Court enter an order approving the Settlement Motion on or before September 22, 2025. The notice period of the Settlement Motion shall be shortened by the Parties pursuant to Bankruptcy Rule 9006(c)(1) and Local Rule 9006-1(b) of the Rules of Practice and Procedure of the Bankruptcy Court.

5. **Temporary Restraining Order.** On the Execution Date, the Bankruptcy Court shall enter a temporary restraining order in the form attached hereto as **Exhibit 2**.

6. **Releases by Origin**. Upon the Effective Date, for and in consideration of the terms of this Agreement and other good and valuable consideration, and subject to the other terms, provisions and limitations of this Section, the Origin Parties and the Origin bankruptcy estate, as well as their respective successors (including any trustee that may be appointed under chapter 7 or chapter 11 of the Bankruptcy Code and any representative of the estate pursuant to Bankruptcy Code section 1123(b)), parents, affiliates, assigns and heirs (collectively, the "Origin Releasing Parties"), do hereby release, acquit and forever discharge Icelandic, and its successors, assigns, predecessors, divisions, affiliated companies, and subsidiaries as well as their heirs, insiders, agents, parents, insurers, officers, directors, employees, administrators, attorneys and assigns (together, the "Icelandic Released Parties") from any and all claims, actions, causes of action, charges, demands, losses, fees and any other damages of every kind, nature and description whatsoever, whether known or unknown, whether asserted or unasserted, whether past or present, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, whether arising in common law or by statute or by equity, whether based on contract, tort, or otherwise, or any other form of injury that the Origin Releasing Parties and the Origin bankruptcy estate now have or ever had against any of the Icelandic Released Parties from the beginning of time through and including the date of this Agreement related to the Base Case, the Iredell Case, the Icelandic Claims, the Origin Claims, the Equipment, the AP and any obligation between the parties, except for any claims to enforce the Icelandic Released Parties' representations, covenants, and obligations under this Agreement. This release shall be construed as broadly as possible and permitted under the law.

7. **Releases by Icelandic**. Upon the Effective Date, for and in consideration of the terms of this Agreement and other good and valuable consideration, and subject to the other terms, provisions and limitations of this Section, Icelandic as well as its successors, parents, affiliates, assigns and heirs (the "Icelandic Releasing Parties"), does hereby release, acquit and forever discharge the Origin Parties and the Origin bankruptcy estate, and their respective successors, assigns, predecessors, divisions, affiliated companies, and subsidiaries as well as their heirs, insiders, agents, parents, insurers, officers, directors, employees, administrators, attorneys and assigns (together, the "Origin Released Parties") from any and all claims, actions, causes of action, charges, demands, losses, fees and any other damages of every kind, nature and description

whatsoever, whether known or unknown, whether asserted or unasserted, whether past or present, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, whether arising in common law or by statute or by equity, whether based on contract, tort, or otherwise, or any other form of injury that the Icelandic Releasing Parties now has or ever had against any of the Origin Released Parties from the beginning of time through and including the date of this Agreement related to the Base Case, the Iredell Case, the Icelandic Claims, the Origin Claims, the Equipment, the AP and any obligation between the parties, except for any claims to enforce the Origin Released Parties' representations, covenants, and obligations under this Agreement. The foregoing release shall include any such assertion of Icelandic Released Parties related to a pre-petition obligation and any assertion of administrative expense claim in the Base Case (except to the extent any such administrative expense claim is based on the Origin Released Parties' breach of any representations, covenants, and obligations under this Agreement). This release shall be construed as broadly as possible and permitted under the law. Notwithstanding any other provision herein, the releases in this Section 7 shall not relieve Origin of its obligations pursuant to that certain Mutual Non-Disclosure Agreement by and between Origin and Icelandic dated as of August 26, 2024 (the "MNDA"), and shall not bar any claims by Icelandic to enforce the MNDA based on actions occurring after the Execution Date. For the avoidance of doubt, the MNDA shall remain in full force and effect in accordance with its terms.

8. **Voluntary Dismissal.** On or before September 30, 2025, pursuant to Bankruptcy Rule 7041 the Parties shall file in the AP a stipulated voluntary dismissal with prejudice as to all claims asserted in the AP, which shall provide the Parties shall each bear their own costs and attorneys' fees with respect to the AP.

9. **Representations and Covenants by Origin.**

a. **Representations.** Origin and HL hereby represent and warrant, that as of the Execution Date and the Effective Date, the (i) Equipment is in working order and is in the same condition as when the Equipment was installed, ordinary wear and tear excepted; (ii) the Equipment will be retrieved by Icelandic or its designated third party specialist, at Icelandic's own expense and cost, as soon as reasonably practicable following the Effective Date; and (iii) prior to the Effective Date, Icelandic's recipes and other Confidential Information (as defined in the MNDA) have not been shared with Origin customers and/or third parties.

b. **Covenant.** On the Effective Date, except to the extent such Confidential Information constitutes the Equipment or is integrated with the Equipment, Origin shall destroy all copies of the Confidential Information. Within three (3) days after the Effective Date, an officer of Origin shall certify to Icelandic that such destruction has occurred in a declaration or affidavit executed under penalty of perjury in a form acceptable to Icelandic.

c. **Amendment of Schedules.** On or before September 30, 2025, Origin shall file amended schedules of assets and liabilities, which shall be amended to remove the Equipment as an asset of the debtor.

10. **Non-Disparagement.** The Parties, on behalf of themselves and their respective agents, representatives, predecessors, successors, assigns, officers, directors, members and employees, agree to refrain from making any statement, written or oral (including but not limited

to statements on social media), that would defame the other Party or such Party's agents, representatives, predecessors, successors, assigns, officers, directors, members or employees.

11. <u>Compromise Not an Admission</u>. The Parties agree and acknowledge that this Agreement is being entered into only for the purpose of avoiding the burdens, inconveniences and expenses of further disputes and litigation between the Parties as it relates to the Claims and the AP. The execution of this Agreement is not and shall not be construed or deemed to be an admission or concession by any party as to the merits of any claim or defense of the Parties.

12. <u>Governing Law</u>. This Agreement shall be deemed to be a contract made under, and for all purposes shall be governed by and construed in accordance with the laws of the State of North Carolina and 11 U.S.C. § 101 *et seq.*

13. <u>Successors In Interest.</u> This Agreement shall be binding upon the Parties and each of their respective heirs, predecessors, successors, assigns, affiliates, agents, insurers, employees, legal representatives and any other persons or entities acting on their behalf or claiming through or under them or any of them (including, in the case of Origin, any trustee that may be appointed under chapter 7 or chapter 11 of the Bankruptcy Code and any representative of the estate pursuant to Bankruptcy Code section 1123(b)), and shall inure to the benefit of all the Parties, as well as each of their respective heirs, predecessors, successors, assigns, affiliates, agents, insurers, employees, legal representatives and any other persons or entities acting on their behalf or claiming through or under them or any of them.

14. <u>Entire Agreement.</u> No promise or agreement other than those recited above has been made as consideration for the releases and discharges effected by this Agreement, and the Parties enter into this Agreement for the sole consideration recited herein. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior proposals, negotiations, understandings, representations and agreements relating to such subject matter.

15. <u>All Amendments Must Be In Writing.</u> The terms of this Agreement may not be changed, modified, waived, discharged or terminated in any manner, except by written instrument signed by all of the Parties.

16. <u>Agreement Costs and Fees</u>. The Parties agree that they shall pay their own costs and attorneys' fees associated with the negotiation and execution of this Agreement.

17. <u>Counterparts</u>. This Agreement may be executed in duplicate counterparts, each of which shall be deemed an original and all of which shall constitute but one and the same instrument.

18. <u>No Waiver of Right to Enforce Terms of Agreement</u>. By signing this Agreement, the Parties do not waive any right or claim to enforce the terms of this Agreement, but rather the Parties specifically reserve their rights to bring an action in the Bankruptcy Court to enforce the terms of this Agreement or any other Court of competent jurisdiction.

19. <u>Authority.</u> Each signatory hereto for any legal entity represents and warrants that he or she has full power and authority to legally bind such entity to this Agreement.

20. **Severability**. The Parties agree that if any term of this Agreement is deemed to be invalid for any reason, the remaining terms and provisions shall retain their full force and effect; provided, however, that if Section 2, or any portion thereof, is severed from this Agreement, Section 1 of this Agreement shall be unenforceable and without effect.

21. **No Assignment**. The Parties covenant and agree that each has not assigned, transferred or conveyed in any manner all or any part of their legal claims or legal rights in connection with the matters described above.

***[SIGNATURES APPEAR ON THE FOLLOWING PAGE]***

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered on the date first written above.

**ORIGIN FOOD GROUP, INC.**

By: ______________________________ (SEAL)
Name: Halil Ulukaya
Its: President

**GEORGE SAMARTZIS**

By: ______________________________ (SEAL)

**HALIL ULUKAYA**

By: ______________________________ (SEAL)

**ICELANDIC PROVISIONS, INC.**

By: ______________________________ (SEAL)
Name: ANTHONY T. SCIORTINO
Its: CFO

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed and delivered on the date first written above.

**ORIGIN FOOD GROUP, INC.**

By: ______________________________ (SEAL)
Name: ______________________
Its: _________________________

**GEORGE SAMARTZIS**

By: ______________________________ (SEAL)

**HALIL ULUKAYA**

By: ______________________________ (SEAL)

**ICELANDIC PROVISIONS, INC.**

By: ______________________________ (SEAL)
Name: ______________________
Its: _________________________

# EXHIBIT 1

# SCHEDULE A

| | | Serial Number |
|---|---|---|
| TetraPak 4 Loop Plate and Frame Ultra Filtration system | 1 | 586037-0011 |
| TetraPak Homogenizer | 1 | 5870721254 |
| Trucent Milk Separator | 1 | M03920 |
| CEM Sprint Protein Analyzer System | [redacted] | |
| Analyzer | 1 | NT3478 |
| Scale x1 | 1 | N/A |
| Stir Plate | 2 | N/A |
| Stir Bar | 1 | N/A |
| Bottles | several | N/A |
| iTag | 2 | N/A |
| Sol 2 | 1 | N/A |
| Sol 3 | 1 | N/A |
| IFM Level Sensor | 1 | N/A |
| [redacted] | | |
| 1.5" TC Wye Tee | 2 | N/A |
| APV Plate HX w/ Cart | 1 | N/A |
| [redacted] | | |
| Fans and Extension Cords | 15 | N/A |
| M37 Membranes | box | N/A |
| Rental Loma X-Ray Machine | 1 | N/A |
| Deep Freezer Chest | 1 | N/A |
| TetraPak Control Panel | 1 | N/A |
| TetraPak AC Unit for Control Panel | 1 | 1629040019 |
| TetraPak 70 gallon Vessels | 2 | N/A |
| TetraPak 200 gallon Vessels | 2 | N/A |
| TetraPak Single Loop P&F | 1 | N/A |
| Allen Bradley Power Supplys - Power Flex 400 | 2 | N/A |
| Allen Bradley Power Supplys - Power Flex 753 | 1 | N/A |
| Allen Bradley Power Supplys - Power Flex 525 | 1 | N/A |
| Pump, LKH-25/165-FSS-10.00hp-EPDM IS | 1 | R985745 |
| Pump, LKH-20/165-FSS-10.00hp-EPDM IS | 1 | R985744 |
| Pump, LKH-20/165-FSS-10.00hp-EPDM IS | 1 | R985743 |
| Pump, LKH-20/165-FSS-10.00hp-EPDM IS | 1 | R985742 |

# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-50268 |
| | ) | |
| ORIGIN FOOD GROUP, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| ICELANDIC PROVISIONS, INC., | ) | Adv. Pro. No. 25-05013 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ORIGIN FOOD GROUP, LLC, HALIL ULUKAYA, and GEORGE SAMARTZIS | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**[PROPOSED] TEMPORARY RESTRAINING ORDER**

Upon the motion (the "Motion")[1] of plaintiff Icelandic Provisions, Inc. ("Icelandic") for (i) a temporary restraining order preventing the Debtor (together with Icelandic, the "Parties" and each of them, a "Party") from using, modifying, altering, removing, or otherwise affecting Icelandic's equipment, and (ii) an order setting a hearing on Icelandic's motion for claim and delivery and for a preliminary injunction; it appearing that the relief requested is just and equitable; notice of the Motion having been adequate and appropriate under the circumstances; and in light of the Parties' representation that they have reached a proposed settlement of their dispute concerning the Equipment (the "Settlement"); after due deliberation and sufficient cause appearing therefor,

THE COURT FINDS:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. This Court has jurisdiction over the Motion pursuant to sections 157 and 1334 of Title 28. Venue is proper in this district and in this Court pursuant to section 1408 and 1409 of Title 28.

C. The bases for the relief requested in the Motion are Federal Rules of Bankruptcy Procedure 7064 and 7065 and Federal Rules of Civil Procedure 64 and 65.

D. Sufficient notice of the Motion was given to the Debtor and the other defendants.

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

E. In connection with the Settlement, which remains subject to final documentation and Court approval, the Parties have agreed upon the issuance of an order enjoining the Debtor (and its officers, directors, managers, shareholders, employees, attorneys, agents, assigns, and all others acting for or on behalf of such person, or acting under and/or in concert with them) from using, modifying, altering, removing or otherwise affecting the Equipment pending removal of the Equipment from the Debtor's facility, which the Parties anticipate will occur by September 22, 2025.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as provided in this Order.

2. Until further ordered by the Court, the Debtor and its respective officers, directors, managers, shareholders, employees, attorneys, agents, assigns, and all others acting for or on behalf of such person, or acting under and/or in concert with them, are hereby restrained, enjoined and prohibited from using, modifying, altering, removing or otherwise taking any action affecting the Equipment pending removal of the Equipment from the Debtor's facility pursuant to the Settlement.

3. The restraining order issued herein shall remain in effect until the Court enters a further order with respect to this Order.

4. Icelandic is not required to post a bond or other security in connection with the relief granted herein, as sufficient cause exists to relieve Icelandic of any such requirement under Federal Rule of Civil Procedure 65(c).

5. Provided the proposed Settlement is not approved by this Court, the entry of this Order shall not be construed as an election of waivers by the Parties related to the issues, claims, and defenses raised in this Adversary Proceeding, and is entered without prejudice to the claims,

rights, and defenses of the Parties as to all issues and claims the Parties may assert as to the contested matters raised in the Base Case, this Adversary Proceeding, or any future injunctive hearing, including any hearing set for September 30, 2025.

6. The Court retains jurisdiction over this matter, including to approve and grant relief related to the Settlement.

SO ORDERED, this __ day of ___________, 2025

_______________________

Hon. Laura T. Beyer
United States Bankruptcy Judge